HEUBLEIN, INC.

V.

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL OF THE
COMMONWEALTH OF VIRGINIA, ET AL.

Record No. 860321

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Thomas F. Farrell, II; C. Torrence Armstrong (McGuire, Woods, Battle & Boothe,* on briefs), for appellant.

*Donald A. Lahy, Assistant Attorney General; Wiley R. Wright, Jr. (Mary Sue Terry, Attorney General; William Griffith Thomas; Thomas A. Lisk; Thomas & Fiske, P.C.,* on briefs), for appellees.

WHITING, J., delivered the opinion of the Court.

Heublein, Inc. (Heublein), a nationwide supplier of wines, brought this declaratory judgment suit against the Department of Alcoholic Beverage Control of the Commonwealth of Virginia, its Commissioners (the ABC Board), and six wholesalers of Heublein's wines[1] to determine the validity of the Virginia Wine Franchise Act, Code §§ 4-118.21 to .41, which became effective July 1, 1985. The trial court permitted the Virginia Wine Wholesalers Association to intervene as an additional defendant. All parties but Heublein are proponents of the validity of the Act and will be referred to collectively as the proponents.

Within the six-month period prior to the effective date of the Act, Heublein unilaterally terminated its at-will contracts with the six wholesalers. In July 1985, two of the wholesalers filed complaints before the ABC Board. In those complaints, they alleged that the Act forbade their termination and asked the Board to reinstate them as distributors as provided by the Act.

Alleging that the Act was unconstitutional, Heublein successfully sought a temporary injunction forbidding the Board to proceed until the circuit court determined whether the Act was constitutional. Upon the trial court's entry of the final order adverse to Heublein, the temporary injunction was dissolved.

Heublein asserted that the retroactive feature of Code § 4-118.38[2] was an unconstitutional violation of the proscriptions

---

[1] They are: The Globe Distributing Company; Virginia Imports, Ltd.; Evans Distributing Company, Incorporated; Lawrence Distributing Company, Incorporated; Pittsfield, Inc.; and The Straus Meyers Corp.

[2] Code § 4-118.38, effective July 1, 1985, provides in pertinent part:

against the impairment of contracts contained in the Constitutions of the United States and Virginia. The trial court disagreed. Heublein next argued that the exemption of Virginia farm wineries from the provisions of the Act in the second sentence of Code § 4-118.38[3] and a contractual restriction contained in Code § 4-118.27(B)[4] were violative of the Contract and Commerce Clauses of the Constitution of the United States and the Contract Clause of the Constitution of Virginia. The trial court agreed with Heublein as to the Commerce Clause violations but held that the offending provisions could be severed from the balance of the Act.

Heublein appeals the adverse findings of constitutionality and severability, and the Commonwealth assigns cross-error to the finding that the Act was unconstitutional in part.

## I.

### CONSTITUTIONALITY OF ACT

We consider Heublein's attack upon the constitutionality of the Act against the background of our previous decisions. We have held that every statute "carries a strong presumption of validity" and unless it "clearly violates a provision of the United States or Virginia Constitutions, we will not invalidate it." *City Council* v. *Newsome*, 226 Va. 518, 523, 311 S.E.2d 761, 764 (1984). Moreover, "the Constitution is to be given a liberal construction so as to sustain the enactment in question, if practicable." *Waterman's Assoc.* v. *Seafood Inc.*, 227 Va. 101, 110, 314 S.E.2d 159, 164 (1984).

---

This chapter shall apply to franchise or distribution agreements . . . in effect as of January 1, 1985, and any renewal or amendment of such agreements.

[3] This sentence provides:

However, this chapter does not apply to any agreement between a farm winery and wine wholesalers providing for or resulting in the sale or distribution by the wholesaler of less than 18,000 liters of wine for such farm winery during a one-year period. [A 'winery' as defined in the chapter, Code § 4-118.23, includes in part all commercial wineries and all out-of-state wineries licensed as wineries under Code § 4-25, and Virginia farm wineries licensed under Code § 4-25.1.]

[4] Code § 4-118.27(B) provides in pertinent part:

Notwithstanding the terms, provisions or conditions of any agreement or written contract which evidences such agreement, no winery shall unilaterally amend a wholesaler's contract unless the same amendment is . . . made uniformly as to all wholesalers of the winery in question in all states in which the winery is marketing its product.

## A. *Retroactive Application of the Act*

Heublein claims that the provision eliminating a supplier's right to terminate at-will contracts with its wholesalers in the six-month period *before* the Act became effective is retroactive legislation "impairing the obligation of [Heublein's] contracts" in violation of Article I, § 10, of the Constitution of the United States and Article I, § 11, of the Constitution of Virginia. In deciding this issue, we do not consider the impact of the Twenty-first Amendment upon the Contract Clause of the Constitution of the United States. Instead, we consider the Contract Clause of the Constitution of Virginia, which has no provision similar to the Twenty-first Amendment.

▆▆▆ We deal with the interplay between Virginia's constitutional obligation not to adopt legislation which impairs the obligation of contracts and the exercise of its police power. As we pointed out in *Waterman's Assoc.*, the Contract Clause of the Constitution of Virginia does impose some limits upon the State's power to abridge existing contracts in the exercise of its otherwise legitimate police powers. 227 Va. at 110, 314 S.E.2d at 164. We bear in mind, however, that we are dealing with the regulation of an industry "affected with a public interest," *Com.* v. *Anheuser-Busch, Inc.*, 181 Va. 678, 683, 26 S.E.2d 94, 96 (1943), and one which can have a profound effect upon the safety, health, and well-being of Virginia communities, *Dickerson* v. *Commonwealth*, 181 Va. 313, 321, 24 S.E.2d 550, 554 (1943), *aff'd*, 321 U.S. 131 (1944).

Using the analysis suggested by *Waterman's Assoc.*, we first examine the contractual rights affected by the Act. The Act, Code § 4-118.27, takes away any discretionary right a supplier might have had to terminate an at-will contract. Code § 4-118.38 forbids a supplier's exercise of any such contractual right in the six-month period *before* the Act became effective.

▆▆ Second, we consider whether this retroactive application of the Act operates as a substantial impairment of Heublein's right to terminate its at-will contracts with its wholesalers. We agree with the trial court's factual finding that the imposition of this condition upon a wine supplier's discretionary right to terminate its contract with its wholesaler is a "severe alteration of contractual obligations."

Because Code §§ 4-118.27 and .38 severely impair Heublein's contractual rights, we next must make a careful examination of

the nature and purpose of this legislation. *Waterman's Assoc.*, 227 Va. at 111-12, 314 S.E.2d at 165. The proponents argue that the Act's purpose is to preserve the three-tier system of supplier-wholesaler-retailer necessary to control the distribution of alcoholic beverages in Virginia. They reason that, during the period just prior to its adoption, were it not for this provision of the Act, the suppliers could upset the three-tier system by retaliatory terminations of existing contracts with those wholesalers who advocated the adoption of the Act. The difficulty with the argument is that if any such contract is terminated, the supplier who desires to continue to do business in Virginia must execute another contract with some other Virginia wholesaler. Code §§ 4-25(A)(3) and -64. Thus, the three-tier system is not affected by any such terminations.

The Attorney General, in oral argument, contended that the cases of *Schieffelin & Co.* v. *Department of Liquor Control*, 194 Conn. 165, 479 A.2d 1191 (1984), and *Empire Distributors of the Carolinas, Inc.* v. *Heublein Wines*, No. 84-160-CIV-5, an unreported 1985 case decided by the United States District Court in the Eastern District of North Carolina, sustained similar legislation. Our reading of those cases, however, indicates that they deal only with the validity of legislation affecting the *future* performance and termination of contracts in existence when a legislative act became effective. They do not discuss a legislative effort to make statutes retroactive so as to affect pre-statutory performance or termination of such contracts.

■ We conclude that this provision is not a proper exercise of the police power but simply an effort to protect a small group of wholesalers from possible economic loss. Accordingly, we hold that it is invalid as a violation of the Contract Clause, Article I, Section 11, of the Constitution of Virginia.

### B. *Commerce Clause Considerations*

Heublein maintains that two provisions of the Act discriminate against out-of-state wineries in violation of the Commerce Clause of the Constitution of the United States. U.S. Const. art. I, § 8, cl. 3.

First, Heublein contends that Code § 4-118.27(B) requires it to amend all contracts it has with its out-of-state wholesalers to conform to any unilateral contractual amendment Heublein desires to make with its Virginia wholesalers. Heublein attacks this provi-

sion as an effort to regulate the commerce of other states. The proponents respond that this is a legislative effort to "mitigate or lessen the severity of the Act" by restoring Heublein's right to unilaterally amend its contract with a wholesaler, provided that the same amendment is inserted in all of Heublein's contracts with its out-of-state wholesalers.

In *Brown-Forman Distillers* v. *N.Y. Liquor Auth.*, 476 U.S. 573, 584-85 (1986), a New York statute required that any liquor distiller distributing liquor in New York sell its liquor to its New York distributors at the same price it sold its liquor to any other distributor in any other state. Finding that the practical effect of the statute was to control liquor prices in other states, the Supreme Court invalidated the statute as a violation of the Commerce Clause of the Constitution of the United States.

We see very little difference between Brown-Forman's option to raise or lower its prices and Heublein's option to amend its contracts with its Virginia wholesalers. Brown-Forman did not have to raise or lower its New York liquor prices, but if it did so, it had to do the same thing in all other states. If Heublein desired unilaterally to amend its wholesalers' contracts in Virginia, it would have to impose the same amendment in every other state. For this reason, we conclude that this provision is invalid as a violation of the Commerce Clause.

Second, Heublein contends that Code § 4-118.38, exempting Virginia farm wineries which do not sell more than 18,000 liters of wine to any one wholesaler in any one year, is a violation of the Commerce Clause because it discriminates against out-of-state wineries. The proponents reply that the Twenty-first Amendment of the Constitution of the United States broadens the states' police power in regulating liquor traffic and permits such discrimination if there is some connection between the exemption and the regulation of liquor used in the state.

Thus, we must reconcile those competing interests. Justice Powell pointed out in *California Liquor Dealers* v. *Midcal Aluminum*, 445 U.S. 97, 110 (1980), that "there is no bright line between federal and state powers over liquor. . . . The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'" (Citation omitted.)

We fail to see how this exemption of Virginia farm wineries will promote temperance within the Commonwealth or serve any legit-

imate interest the Commonwealth may have in regulating the sale of alcoholic beverages. Although the present exemption does not contain the avowed purpose to foster local wineries, as did the tax exemptions on a locally produced wine and brandy which were invalidated in *Bacchus Imports, Ltd.* v. *Dias*, 468 U.S. 263 (1984), it is clear that the General Assembly created the exemption for that purpose. Moreover, in addition to its express exemption of Virginia farm wineries from this Act, the General Assembly has manifested an intent not to restrict their growth in a number of other ways. The Act was twice amended to expand the farm winery exclusion. In the same session in which the Act was adopted, the General Assembly established the Virginia Winegrowers Advisory Board and, in its declaration of policy, recited its interest in encouraging the promotion and marketing of Virginia wine. Code §§ 4-28 and 4-15.01, adopted in 1984, provided for the exclusive sale of Virginia farm wines in Virginia A.B.C. stores and exempted the Board's purchase of such wines from the requirements of the Virginia Public Procurement Act, Code §§ 11-35 to -80. In 1981, the General Assembly adopted a statute, Code § 4-25.1, which expressly permitted farm wineries to sell wine at wholesale and retail without the wholesale wine distributors' license required of other wineries.

Given the legislative background of the exemption and the other statutes adopted at about the same time, we conclude that the farm winery exemption is an invalid attempt to favor local wineries over out-of-state wineries in violation of the Commerce Clause.

## II.

### *SEVERABILITY*

Having decided the exemption of farm wineries is unconstitutional, we must determine whether the General Assembly would have passed the Act without it. *Bd. Sup. James City County* v. *Rowe*, 216 Va. 128, 147, 216 S.E.2d 199, 214 (1975). For the reasons which follow, we conclude the General Assembly would not have done so.

In adopting Code § 4-118.41(B), the General Assembly took particular care to provide specifically for application of the statute to franchise agreements made on or after July 1, 1985 if the earlier date for the application of the statute were held invalid. Thus,

there can be no doubt of the legislative intent to sever this provision, should it later be declared invalid.

In contrast, should any other part of the Act be held unconstitutional, in Code § 4-118.41(A) the General Assembly provided for severability of the remaining portions of the Act in general language only. Because the Act contains a severability clause in non-specific language, we presume the portions of the Act invalidated as Commerce Clause violations can be severed and the remainder of the Act enforced, but this rule of construction " 'is an aid merely; not an inexorable command.' " *Rowe*, 216 Va. at 147, 216 S.E.2d at 214. (Citation omitted.)

Despite a severability provision, in *Richmond v. Beltway Properties*, 217 Va. 376, 379, 228 S.E.2d 569, 572 (1976), we did not sever an invalid limitation of a license tax ordinance to taxation of four or more residential rental units. We sustained a trial court's finding of a legislative intent not to sever upon evidence that: (1) city officials had considered and treated this limitation as essential in administering the ordinance; and (2) the city council had repealed the entire ordinance just after we had invalidated a similar ordinance of another city. On the other hand, in the absence of a severability clause, in *Portsmouth v. Citizens Trust*, 216 Va. 695, 699, 222 S.E.2d 532, 535 (1976), we severed a similar portion of an invalid city license tax ordinance which provided that a person would not be deemed to be renting residential property unless the person rented four or more residential units. There, we found a legislative intent to sever in the earlier language of the ordinance levying the tax upon "every person in the business of renting residential property," and in the council's subsequent amendment of the ordinance to subject the excluded persons to the tax. Our ultimate determination, of course, depends upon the intent of the legislature. Id. at 699, 222 S.E.2d at 535 (Citation omitted).

If we should sever the invalid provision, we are confronted by two choices. One, we can sever only that portion of the Act effectively limiting the exemption to *Virginia* farm wineries. If so, we thereby expand the exemption to exempt Virginia and non-Virginia commercial wineries if they sell no more than 18,000 liters of wine to any wholesaler in any one year, contrary to an express legislative intent to include such wineries within the coverage of the Act. Or, two, we can invalidate the entire exemption. If we do that, we subject Virginia farm wineries to the provisions of

the Act in the face of the General Assembly's express contrary intent. This application of the Act will, as the trial court found, severely alter the Virginia farm wineries' right to contract, thereby imposing substantial and burdensome restrictions upon a group the General Assembly clearly intends to "promote."

Thus, each alternative applies the Act in a manner contrary to the obvious intent of the General Assembly. Moreover, the very act of choosing involves a decision as to which groups will be benefited or burdened by the Act. That decision is more appropriately made by a legislative body and not a court. *Boyles* v. *City of Roanoke*, 179 Va. 484, 487-88, 19 S.E.2d 662, 663 (1942).

In light of the foregoing, we find that we cannot sever the invalid provision and, therefore, we must hold the entire Act unconstitutional. Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Heublein.

*Reversed and final judgment.*