[No. 72882-8. En Banc.]
Argued November 21, 2002. Decided February 20, 2003.

MT. HOOD BEVERAGE COMPANY, ET AL., *Appellants*, v. CONSTELLATION BRANDS, INC., ET AL., *Respondents*.

ALASKA DISTRIBUTORS COMPANY, *Appellant*, v. SEBASTIANI VINEYARDS, INC., *Respondent*.

100

*Robert Baronsky* and *Tracey A. Thompson* (of *Eisenhower & Carlson*) and *Paul R. Taylor* and *Karen V. Chiu* (of *Byrnes & Keller*), for appellants.

*Christopher I. Brain* and *Michael D. Daudt* (of *Tousley Brain Stephens, P.L.L.C.*), for respondents.

JOHNSON, J. — These consolidated cases require us to determine whether chapter 19.126 RCW, insofar as it regulates the contractual rights and obligations of wine suppliers and distributors to one another, violates the dormant commerce clause by unfairly discriminating against out-of-state suppliers, and, if so, whether the twenty-first amendment to the United States Constitution prevents it from being struck down.

We affirm the superior courts in these cases and hold that the express exemption of in-state wine suppliers in chapter 19.126 RCW facially violates the dormant commerce clause because it protects in-state wine suppliers, thereby discriminating against out-of-state suppliers. We further hold

chapter 19.126 RCW is not saved by the Twenty-first Amendment because exempting in-state wine suppliers from the requirements of chapter 19.126 RCW does not fall within the core concerns of the amendment. We also hold that the exemption of in-state wine suppliers cannot be severed from the remainder of chapter 19.126 RCW because to do so would impermissibly broaden the statute. We therefore strike chapter 19.126 RCW down in its entirety as applied to wine distributors and suppliers.[1] We also affirm the superior court's dismissal of Alaska Distributors Co.'s common law claims against Sebastiani Vineyards, Inc. Finally, we affirm the award of fees and costs.

## STATUTORY HISTORY

These consolidated cases present two sets of related facts. The parties of both cases are businesses regulated by chapter 19.126 RCW, the Wholesale Distributor/Supplier Equity Agreement Act (hereinafter RCW 19.126). The appellants are licensed distributors of wine in Washington and the respondents are out-of-state suppliers of wine. Because this statutory scheme is central to these cases, a brief initial orientation is helpful to understand the factual context of the cases.

After the Twenty-first Amendment repealed prohibition, Washington enacted legislation regulating the distribution of beer and wine within the state. Title 66 RCW; ch. 66.24 RCW; ch. 66.28 RCW. The legislation created a state-enforced, three-tiered distribution system for wine and malt beverages, separating suppliers, distributors, and retailers. For example, out-of-state wine suppliers must have a Washington State issued license and can sell wine within Washington only to licensed distributors. RCW 66.24.203(1), .200. With some exceptions, "[n]o manufacturer, importer, or distributor, or person financially interested, directly or indirectly, in such business . . . shall have

---

[1] Chapter 19.126 RCW also applies to distributors and suppliers of malt beverages. Because the statute does not discriminate between in-state and out-of-state malt beverage suppliers, the statute is not affected as to that application.

any financial interest, direct or indirect, in any licensed retail business . . . ." RCW 66.28.010(1)(a). The three-tier system itself, established in chapter 66.24 RCW and chapter 66.28 RCW, is not challenged in this case.

In 1984, the legislature passed RCW 19.126 to enhance the three-tier system. RCW 19.126 "governs the relationship between suppliers of malt beverages and wine and their wholesale distributors . . . ." RCW 19.126.010(2). RCW 19.126 further strengthens the middle tier, the distributors, by "[a]ssuring the wholesale distributor's freedom to manage the business enterprise, including the wholesale distributor's right to independently establish its selling prices . . . ." RCW 19.126.010(1)(a).

Central to the issues in these cases, RCW 19.126 enhances the contractual rights and responsibilities that suppliers and distributors have to one another, generally prohibiting suppliers from terminating contracts with distributors without cause or notice. A distributor must give a supplier 90 days' written notice "of any material change in its ownership or management and the supplier has the right to reasonable prior approval of any such change . . . ." RCW 19.126.030(6). Likewise, "[a] supplier shall give the wholesale distributor at least sixty days prior written notice of the supplier's intent to cancel or otherwise terminate the agreement . . . ." RCW 19.126.040(2). The notice must give the reasons for the termination and allow the distributor 60 days "in which to rectify any claimed deficiency." RCW 19.126.040(2). If the supplier terminates the distribution contract without following this requirement, the statute provides that the distributor is entitled to "compensation for the laid-in cost of inventory and liquidated damages measured on the fair market price of the business . . . ." RCW 19.126.040(3). These provisions apply to all suppliers of wine to Washington State. RCW 19-.126.020(3).

Significant to this appeal, RCW 19.126 exempts all in-state wineries from the definition of "supplier." RCW 19.126.020(3)(a). The statute also exempts from the defini-

tion of "supplier" any winery, either in-state or out-of-state, that produces less than 300,000 gallons of wine per year. RCW 9.126.020(3)(b).[2]

## FACTUAL AND PROCEDURAL HISTORY

*Alaska Distributors Co. v. Sebastiani Vineyards, Inc.*

Alaska Distributors Co. (Alaska) is a registered distributor of wine and malt beverages in Washington State. Alaska had an oral exclusive distribution contract with Sebastiani Vineyards, Inc. (Sebastiani), an out-of-state supplier of wine to Washington State, to distribute its products, including its Turner Road Vintners (TRV) line, in certain regions within the state. Clerk's Papers (CP)[3] at 3, 7, 437.

Alaska alleges Sebastiani effectively terminated its contract in violation of RCW 19.126 by selling the TRV brand to another company and not guaranteeing Alaska would continue to distribute the brand for the new company. In March 2001, without prior notice to Alaska, Sebastiani sold TRV to Constellation Brands, Inc., d/b/a Canandaigua Wine Company (CWC). Alaska claims that Sebastiani assured them that CWC would take and fulfill its TRV wine orders. Sebastiani alleges it instead gave CWC a list of in-state distributors of its TRV line that did not include Alaska, and the contract between Sebastiani and CWC provided that CWC did not assume Sebastiani's obligations to its TRV distributors.

Alaska sued Sebastiani, asserting two causes of action. First, Alaska alleged a violation of its rights under RCW

---

[2] " 'Supplier' means any malt beverage or wine manufacturer or importer who enters into or is a party to any agreement of distributorship with a wholesale distributor. 'Supplier' does not include: (a) Any domestic winery licensed pursuant to RCW 66.24.170; (b) any winery or manufacturer of wine producing less than three hundred thousand gallons of wine annually and holding a certificate of approval issued pursuant to RCW 66.24.206 . . . ." RCW 19.126.020(3)(a), (b).

[3] Each case has an independently numbered set of clerk's papers. The clerk's papers for *Alaska v. Sebastiani* are designated "CP." Those for *Mt. Hood Beverage Co. v. Constellation Brands* will be designated "CPMH."

19.126,[4] stating Sebastiani "failed to enter into a written distributorship agreement[] with Alaska," and "unilaterally terminated Alaska as a distributor . . . without good cause and without payment as required by RCW 19.126.040." CP at 4. Second, Alaska alleged common law breach of contract and promissory estoppel.

Sebastiani countered that it did not terminate the contract because only CWC had the ability to honor the contract after it bought the TRV line. Sebastiani further argued RCW 19.126 violates the commerce clause of the United States Constitution because it discriminates against the out-of-state wine manufacturers and suppliers. Sebastiani counterclaimed for a declaratory judgment on the grounds that RCW 19.126 was unconstitutional.

Sebastiani moved the superior court for summary judgment, arguing no dispute of material facts existed, and it was entitled to judgment as a matter of law because RCW 19.126 unconstitutionally discriminates against out-of-state commerce. The court granted Sebastiani's summary judgment motion. The superior court agreed RCW 19.126 violated the commerce clause and also dismissed the common law breach of contract claim. CP at 229. Sebastiani then moved for attorney fees, as provided by RCW 19-.126.060. The superior court granted Sebastiani's motion and ordered Alaska to pay $22,636.85 in attorney fees and $835.45 in costs, for a total of $23,472.30. CP at 446.

Alaska appealed to Division One of the Court of Appeals. That court consolidated Alaska's case with the one discussed below and certified both to this court.

---

[4] RCW 19.126.040(2) states in relevant part, "[a] supplier shall give the wholesale distributor at least sixty days prior written notice of the supplier's intent to cancel or otherwise terminate the agreement . . . . The notice shall state all reasons for the intended termination or cancellation. Upon receipt of the notice, the wholesale distributor shall have sixty days in which to rectify any claimed deficiency. . . ."

*Mt. Hood Beverage Co., et al. v. Constellation Brands, Inc., d/b/a Canandaigua Wine Co., et al.*

The appellants in this case, including Alaska, the appellant in the case described above, are all licensed wholesale distributors of wine in Washington. Clerk's Papers Mount Hood (CPMH) at 22, 23. The respondent, CWC, is the same out-of-state supplier that purchased the TRV line from Sebastiani in the above case. CPMH at 22, 23.

In this case, each of the appellant/distributors (hereinafter Distributors) had a written distributorship agreement to distribute CWC products within a particular geographic region of Washington State.

In March 2001, CWC sent a letter to some of the Distributors, notifying them that CWC was terminating its distribution agreement effective April 7, 2001.[5] CPMH at 26. The letter did not give any reason for the termination. CWC then found replacement distributors for each of the regions covered by the canceled agreements. For other regions, CWC merely assigned new distributors, without sending a notice of termination to the Distributors holding contracts for those regions.[6] Simultaneously, CWC sent a letter to the purchasing agents for the retailers in those regions, recommending they purchase CWC products only from the new distributors. CPMH at 28.

The Distributors who received termination letters sued CWC for violating RCW 19.126 by not giving a cause for termination. CPMH at 26. The Distributors who were replaced without notice alleged CWC constructively terminated them in violation of RCW 19.126. CPMH at 30. They also brought nonstatutory breach of contract claims. CPMH

---

[5] The expressly terminated Distributors include Evergreen Distributing Co., Empire Beverage, Inc., Friendly Distributors, Inc., Dickerson Distributors, Inc., Jennings Corporation, Cammarano Bros., Inc., and Alaska Distributors, Inc., d/b/a Western Washington Beverage. CPMH at 7.

[6] The Distributors who were replaced without receiving a notice of termination are Donaghy Enterprises, Inc., d/b/a B&F Distributing Co., Marvelle Corporation, Clark Distributing Co., Mt. Hood Beverage Co., Black Hills Distributing Co., and Stein Distributing, Inc. CPMH at 8.

at 29. Both groups of Distributors sued for damages and attorney fees as allowed under RCW 19.126. CWC responded that RCW 19.126 was unconstitutional because it violated the commerce clause by treating in-state and out-of-state wineries differently and counterclaimed for a declaratory judgment to that effect.

The Distributors and CWC filed cross motions for partial summary judgment on the issue of the constitutionality of RCW 19.126. The superior court granted CWC's motion and denied the Distributors' motion to reconsider. The superior court entered a final judgment pursuant to CR 54(b),[7] finding that because the constitutionality of RCW 19.126 was central to the case, "it makes no sense to proceed with discovery and trial of the non-statutory contract claims while the constitutionality of the Beverages Act remains in question." CPMH at 276. The trial court thus did not rule on the merits of Mt. Hood's nonstatutory claims and they are not before us.

CWC moved for attorney fees and costs, as provided under RCW 19.126. CPMH at 282. The superior court granted this motion, awarding CWC $49,371.00 in attorney fees and $1,874.40 in costs, for a total of $51,245.40. CPMH at 401.

## ISSUES

1. Whether RCW 19.126 violates the commerce clause of the United States Constitution by exempting domestic wineries;

2. If RCW 19.126 violates the dormant commerce clause, whether RCW 19.126 was nonetheless enacted within the State's authority under the twenty-first amendment to the United States Constitution;

---

[7] CR 54(b) states, in relevant part, "When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment."

3. If RCW 19.126's exemption of domestic wineries violates the United States Constitution, whether the exemption is severable from the remainder of the statute;

4. Whether the superior court in *Alaska v. Sebastiani* properly dismissed Alaska's nonstatutory claims of breach of contract and promissory estoppel;

5. Whether respondents Sebastiani or CWC are entitled to attorney fees.

## ANALYSIS

### Dormant Commerce Clause

Sebastiani and CWC (the Suppliers) maintain RCW 19-.126 violates the dormant commerce clause because the statute exempts in-state suppliers from its requirements of notice and termination for cause. They argue out-of-state wine suppliers are thus at a disadvantage because they do not have the same flexibility in terminating distribution contracts as in-state suppliers. Br. of Resp'ts at 3-4. The Suppliers claim this discrimination on the face of the statute renders RCW 19.126 unconstitutional. The Distributors counter that the stated purpose of RCW 19.126 is to serve legitimate local concerns, such as creating orderly market conditions. Br. of Appellants/Mt. Hood at 17-18. They argue that because RCW 19.126 was not enacted for a protectionist purpose, it survives commerce clause scrutiny. Br. of Appellants/Alaska at 20.

■ In the interest of promoting the free flow of commerce among the states, the commerce clause of the United States Constitution gives Congress the exclusive power to regulate interstate commerce. U.S. Const. art. I, § 8, cl. 3.[8] Because states cannot exercise power exclusively reserved to Congress, the negative implication of this affirmative grant is that the states may not protect local industries by creating barriers against interstate trade, even in the absence of

---

[8] "The congress shall have power . . . [t]o regulate commerce with foreign nations, and among the several states . . . ." U.S. Const. art. I, § 8, cl. 3.

congressional action. Therefore, the commerce clause is also the source of constitutional limits on the states' ability to engage in economic protectionism through regulation and taxation of interstate commerce. This implied restriction on state regulation of interstate commerce is known as the negative or "dormant" commerce clause. *Franks & Son v. State*, 136 Wn.2d 737, 747, 966 P.2d 1232 (1998); *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989). *See generally* 1 Laurence H. Tribe, American Constitutional Law 1029-30 (3d ed. 2000).

■ Analysis of a potential dormant commerce clause violation is a two-step process. First, we must determine whether the statute in question facially regulates or discriminates against interstate commerce, or has the direct effect of favoring in-state economic interests over out-of-state interests. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79, 106 S. Ct. 2080, 90 L. Ed. 2d 552 (1986). We presume statutes that do either of these things are economic protection of in-state industry and strike them down without further inquiry, "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274, 276, 108 S. Ct. 1803, 100 L. Ed. 2d 302 (1988).

If the statute is facially neutral, however, and has only indirect effects on interstate commerce, we must look further to determine whether it amounts to economic protection of in-state industries. This second step involves determining whether the statute has a discriminatory purpose and whether the state's interest in the regulation is legitimate. We then carefully balance "whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman*, 476 U.S. at 579.

Here, we do not reach the second step, a determination of the purpose of the statute, because the language of RCW 19.126 facially favors in-state wine producers. The statute states in relevant part,

"Supplier" means any malt beverage or wine manufacturer or importer who enters into or is a party to any agreement of distributorship with a wholesale distributor. *"Supplier" does not include: (a) Any domestic winery licensed pursuant to RCW 66.24.170* . . . .[9]

RCW 19.126.020(3)(a) (emphasis added).

By exempting all in-state wine producers from the definition of "suppliers," only out-of-state wine producers are subject to the statutory restrictions of RCW 19.126.040, which require them to give notice and cause before canceling contracts with distributors. The exemption protects in-state wine producers and discriminates against out-of-state producers because in-state producers are able to contract for distribution of their products with more flexibility than out-of-state suppliers. The justification proffered by the Distributors—ensuring equitable relationships between suppliers and distributors—is equally served by subjecting in-state and out-of-state wine suppliers to the same conditions. We can find no justification for the exemption of in-state wine suppliers unrelated to economic protectionism, and none is asserted. Therefore, the exemption of in-state wineries constitutes economic protection of in-state industry in violation of the commerce clause.

## The Core Principles of the Twenty-first Amendment

■ Although RCW 19.126's exemption of in-state wine producers violates the commerce clause, we must examine the exemption in light of the State's ability to regulate the importation of alcoholic beverages under the Twenty-first Amendment. If state regulation of interstate commerce involving alcoholic beverages sufficiently implicates core principles of the Twenty-first Amendment, the regulation survives constitutional review, despite any commerce clause violation. Stated another way, even where a statute violates the commerce clause, it may be constitutional if the State is acting within its authority under the Twenty-first

---

[9] RCW 66.24.170 requires a license for all domestic wine producers.

Amendment. *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 275-76, 104 S. Ct. 3049, 82 L. Ed. 2d 200 (1984).

The Twenty-first Amendment repealed Prohibition, but protected states' ability to prohibit or regulate the importation of alcoholic beverages into their jurisdictions. Section 2 of the amendment, entitled, "Transportation of Liquor into 'Dry' States," provides in its entirety that "[t]he transportation or importation into any states, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2.

In early cases, the United States Supreme Court held that the amendment "sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause." *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138, 60 S. Ct. 163, 84 L. Ed. 128 (1939). The Court has more recently qualified this holding, stating, "[t]o draw a conclusion . . . that the Twenty-first Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquors is concerned would . . . be an absurd oversimplification." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 331-32, 84 S. Ct. 1293, 12 L. Ed. 2d 350 (1964). "[T]he Federal Government retains some Commerce Clause authority over liquor." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 108, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980). Because the commerce clause and the Twenty-first Amendment are parts of the same constitution, "each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Hostetter*, 377 U.S. at 332.

The proper inquiry, then, is "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714, 104 S. Ct. 2694, 81 L. Ed. 2d 580 (1984). In the context of the present case, the issue is whether the core principles of the Twenty-first Amendment are suffi-

ciently implicated by RCW 19.126's exemption of in-state wine suppliers to outweigh the dormant commerce clause violation. Despite a lack of absolute certainty about the intended principles embodied by the Twenty-first Amendment, at least some of its core principles are "promoting temperance, ensuring orderly market conditions, and raising revenue." *North Dakota v. United States*, 495 U.S. 423, 432, 110 S. Ct. 1986, 109 L. Ed. 2d 420 (1990).

The parties dispute the proper scope of this inquiry. The Distributors maintain we must look to whether the statute as a whole furthers a core concern of the Twenty-first Amendment. The Suppliers argue we must instead limit our analysis to whether the discriminatory *clause* furthers a core concern of the Twenty-first Amendment. Although the United States Supreme Court has not resolved this specific issue, cases from other jurisdictions are instructive.

In *Kendall-Jackson Winery, Ltd. v. Branson*, a federal district court case from Illinois, out-of-state wine suppliers challenged the Illinois Wine and Spirits Industry Fair Dealing Act (Fair Dealing Act). *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 866 (N.D. Ill. 2000). That Fair Dealing Act, like RCW 19.126, required out-of-state wine suppliers to not cancel exclusive distribution agreements without notice and good cause, but exempted in-state wineries from its requirements. *Kendall-Jackson*, 82 F. Supp. 2d at 850. Similar to our analysis of RCW 19.126, the *Kendall-Jackson* court determined that the Illinois Fair Dealing Act facially discriminated against out-of-state wine makers. Also, similar to the present case, the defendants could not articulate a legitimate local purpose served by the discrimination that could not be furthered by nondiscriminatory means. The court concluded the Fair Dealing Act thus violated the dormant commerce clause. *Kendall-Jackson*, 82 F. Supp. 2d at 864.

The *Kendall-Jackson* court then examined whether the in-state winery exemption nonetheless survived under the Twenty-first Amendment by furthering one of the amendment's core concerns—promoting temperance, collecting

revenue, or controlling the traffic of alcoholic beverages within the state's borders. The court agreed that the Fair Dealing Act, as a whole, furthered the three-tier distribution system, and thus the control of the traffic of alcoholic beverages. Nevertheless, the court limited its Twenty-first Amendment inquiry to the exemption of in-state wine producers. It determined that because the in-state winery exemption could not be justified by any Twenty-first Amendment core concerns, the Illinois Fair Dealing Act was unconstitutional. *Kendall-Jackson*, 82 F. Supp. 2d at 866-67.

We adopt the *Kendall-Jackson* approach because we find it in accord with the United States Supreme Court's requirement that the commerce clause and the Twenty-first Amendment be analyzed in light of one another and that the interests served by the economic discrimination be closely related to the powers reserved to the states by the Twenty-first Amendment. *Hostetter*, 377 U.S. at 332; *Capital Cities Cable, Inc.*, 467 U.S. at 714. Under this approach, we must analyze the specific statutory provision in question.

The Distributors argue that RCW 19.126 is exempt from being struck down on commerce clause grounds by the Twenty-first Amendment because the statute's general purpose is to regulate the importation of beer and wine into Washington, which furthers legitimate Twenty-first Amendment goals. Br. of Appellant/Alaska at 12; Br. of Appellant/Mt. Hood at 21. We understand the Distributors' argument, and acknowledge that the stated general purpose of RCW 19.126 is to achieve "fair, efficient, and competitive distribution of [alcoholic] beverages." RCW 19.126.010(1). These purposes further the Twenty-first Amendment concern of ensuring orderly market conditions, but the purposes of RCW 19.126 as a whole have no bearing on our analysis because under the *Kendall-Jackson* approach, we narrow our focus to the discriminatory clause.

The Distributors cite a federal district court case from Florida for support of their position, *Bainbridge v. Bush*,

148 F. Supp. 2d 1306 (M.D. Fla. 2001), which the Eleventh Circuit later vacated in part. *Bainbridge v. Turner*, 311 F.3d 1104 (11th Cir. 2002). We find further support for adopting the *Kendall-Jackson* approach in the Eleventh Circuit's correction of the district court's reasoning. In *Bainbridge*, the district court was presented with whether Florida's prohibition against out-of-state wineries selling directly to in-state consumers met a core concern of the Twenty-first Amendment. The district court ruled that "even though the Florida statutory scheme may have protectionist over-tones," the statute survived because invalidation would hinder the State's ability to collect tax revenue. *Bainbridge*, 148 F. Supp. 2d at 1313. This approach is similar to the one the Distributors advocate in the present case because it focuses on the constitutionality of the statutory scheme as a whole instead of on the protectionist clause.

The Eleventh Circuit refocused the issue onto whether the difference in treatment between in-state and out-of-state wine suppliers—not the scheme as a whole—met a core concern of the Twenty-first Amendment. *Bainbridge*, 311 F.3d at 1115. The appellate court held that

> [b]efore the State can successfully raise the Twenty-first Amendment as a shield, it must show that its statutory scheme is necessary to effectuate the proffered core concern in a way that justifies treating out-of-state firms differently from in-state firms . . . .

*Bainbridge*, 311 F.3d at 1115. The approach we adopt here also requires a Twenty-first Amendment justification for treating in-state and out-of-state wine producers differently.

Other state and federal court decisions also support a narrow examination of the protectionist statutory language when analyzing a commerce clause violation in light of the Twenty-first Amendment. *Heublein, Inc. v. Dep't of Alcoholic Beverage Control*, 237 Va. 192, 376 S.E.2d 77, 80 (1989) (an exemption of in-state wineries from its regulatory scheme does not serve any legitimate Twenty-first Amendment interests); *accord TFWS, Inc. v. Schaefer*, 242

F.3d 198, 212 (4th Cir. 2001) ("a state must demonstrate that its liquor regulatory policies *directly* serve the interests it proffers under the Twenty-first Amendment" (emphasis added)); *Cooper v. McBeath*, 11 F.3d 547, 555 (5th Cir. 1994) (a statutory barrier against nonresidents for mixed beverage permits was not shielded by the Twenty-first Amendment).

We therefore hold that when a statute discriminates against interstate commerce in violation of the commerce clause, the discriminatory clause, not the statute as a whole, must be justified by core concerns of the Twenty-first Amendment in order to survive. The proper inquiry in the present case is not whether RCW 19.126 as a whole advances legitimate Twenty-first Amendment goals, but whether the exemption of in-state wine suppliers from the statute's requirements furthers those legitimate goals.

█ Because the Distributors raised the Twenty-first Amendment justification for the protection of in-state wineries, they had the burden of demonstrating that the economic protection of in-state wineries was constitutional because it furthered a core Twenty-first Amendment concern. They have not offered any legitimate Twenty-first Amendment justifications for the exemption of in-state wine suppliers, and we can find none. The justifications they raise would be equally served by treating in-state and out-of-state wine suppliers equally. Because the exemption of in-state wine suppliers from RCW 19.126 violates the commerce clause and is not sheltered by the Twenty-first Amendment, we hold it is unconstitutional.

### The Webb-Kenyon Act

█ Finally, the Distributors argue that Congress's reenactment of the Webb-Kenyon Act (27 U.S.C. § 122) in 1935 is a conveyance to the states by Congress of the ability to regulate the importation of liquor, thus immunizing state liquor regulation from dormant commerce clause scrutiny. Opening Br. of Appellants/Mt. Hood at 21-22. The Webb-

Kenyon Act preceded the Twenty-first Amendment and was its statutory counterpart. *Bainbridge*, 311 F.3d at 1110-11. It uses similar language to section 2 of that amendment.[10] The Eleventh Circuit concluded that the Webb-Kenyon Act and the Twenty-first Amendment must be read congruently. *Bainbridge*, 311 F.3d at 1110-11. That court reasoned

> Congress might decide to permit an otherwise unconstitutional burden on interstate commerce in one of two ways, either by ordinary legislation or by an amendment to the Constitution. It would be odd to say that the latter—here, the Twenty-first Amendment—does not immunize states from Commerce Clause scrutiny, but that the former does.

*Bainbridge*, 311 F.3d at 1110-11.

Because the Twenty-first Amendment is not an absolute shield to the commerce clause, as we analyze above, "the Webb-Kenyon Act . . . cannot be interpreted as a reconveyance of Congress's authority to interfere with interstate commerce." *Bainbridge*, 311 F.3d at 1111. We adopt this reasoning. Thus, this argument fails.

## Severance

We next must decide whether the offending clause may be severed from the remainder of RCW 19.126. The Distributors argue the exemption for in-state wineries is severable, leaving the remainder of RCW 19.126 enforceable against the Suppliers. Br. of Appellant/Alaska at 25; Br. of Appellant/Mt. Hood at 24. The Suppliers maintain RCW 19.126

---

[10] The Webb-Kenyon Act states, "The shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is prohibited." 27 U.S.C. § 122.

must be struck down in its entirety because severing the exemption of in-state wineries would impermissibly broaden the statute. Br. of Resp'ts at 38.

■ Generally, a statute is not necessarily unconstitutional in its entirety because one or more of its provisions is unconstitutional. If the remainder of RCW 19.126 "can serve its purpose independently" after the unconstitutional clause is removed, severance is appropriate. *State v. Williams*, 144 Wn.2d 197, 213, 26 P.3d 890 (2001). Provisions of a statute are not severable, however, if the constitutional and unconstitutional provisions are so connected that the legislature would not have passed one without the other, or that the remainder of the statute is useless to accomplish the legislative purpose. *Leonard v. City of Spokane*, 127 Wn.2d 194, 201, 897 P.2d 358 (1995).

■ When a statute contains a severance clause, as this one does,[11] we generally attempt to give effect to the clause as an indication the legislature would have passed the remainder of the statute without the invalid portion. *Lynden Transp., Inc. v. State*, 112 Wn.2d 115, 124, 768 P.2d 475 (1989). We do not sever an unconstitutional clause, however, if to do so would broaden the statute's application, because we cannot presume the legislature meant it to be applied to persons it specifically excluded. *City of Seattle v. State*, 103 Wn.2d 663, 678, 694 P.2d 641 (1985); 16A Am. Jur. 2d *Constitutional Law* § 218, at 109 (1998) (If "by striking out the proviso the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid.").

■ Here, severing the exemption would require a group the legislature expressly excluded, in-state wine suppliers that produce over 300,000 gallons of wine annually, to be subject to the rights and responsibilities listed in RCW 19.126, thus broadening the statute's application. *See* RCW 19.126.020(3). We do not presume the legislature intended

---

[11] "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." RCW 19.126.901.

to include in-state wineries that meet this criterion. Therefore, we must strike RCW 19.126 in its entirety, as applied to wine distributors and suppliers,[12] and leave any amending of RCW 19.126 to the legislature.

### Alaska's Breach of Contract and Promissory Estoppel Claims

 Alaska argues the superior court erred in dismissing its nonstatutory claims of breach of contract and promissory estoppel because Sebastiani owed it the common law duty of good faith and fair dealing. Br. of Appellant/Alaska at 35. Alaska contends Sebastiani violated this duty when it did not include Alaska's name on a list of TRV distributors it provided CWC as the purchaser of TRV. Br. of Appellant/ Alaska at 35.

To prevail on summary judgment, Alaska had to prove Sebastiani had a nonstatutory duty not to terminate Alaska's distribution of the TRV line, and no material issues of fact existed. CR 56(c).

The superior court found that "counsel were in agreement as to the scope of the oral agreement which existed between the parties." CP at 438. The agreement merely said Alaska would distribute *all* of Sebastiani wines in specific western Washington counties. "There was no evidence that Sebastiani had agreed to produce any or all of its wines in perpetuity or not to reduce its production." CP at 438. The TRV line is but one line of wines Alaska distributed for Sebastiani, and Alaska conceded it continues to distribute other Sebastiani lines during the period of this litigation.

The superior court concluded, "[t]he TRV line of wines is no longer produced by Sebastiani and, therefore, by definition, Sebastiani has no duty or obligation to use Alaska as a distributor for products which it no longer produces." CP at 438. The superior court concluded Sebastiani continues to fulfill the terms of its oral distribution contract with

---

[12] *See* n.1, *supra.*

Alaska by continuing to use Alaska as a distributor of its other lines.

Alaska argues that when a supplier has an exclusive distribution agreement of indefinite duration with a distributor, the supplier's "right to terminate for any reason is not questioned; but its right to terminate at any time is limited by the giving of a reasonable notice." *Mayflower Air-Conditioners, Inc. v. W. Coast Heating Supply, Inc.*, 54 Wn.2d 211, 215, 339 P.2d 89 (1959). Alaska here contends because Sebastiani gave no prior notice of its sale of the TRV line, it violated this duty. Br. of Appellant/Alaska at 35.

We agree with the superior court that the oral contract for exclusive distribution of Sebastiani products by Alaska has not been breached. Sebastiani no longer produces the TRV line of wines and therefore cannot supply them to Alaska. Alaska does not contest the superior court's conclusion that it remains the exclusive distributor of the remaining Sebastiani lines in the designated regions. We therefore affirm the superior court's dismissal of this claim.

## Attorney Fees and Costs

We now review the challenge to the Suppliers' award of attorney fees and costs pursuant to RCW 19.126.060.[13] The Distributors argue that because the Suppliers successfully argued for the facial invalidity of RCW 19.126, resulting in the statute being stricken in its entirety, as it applies to wine distributors and suppliers, the Suppliers cannot rely on the statutory provision for an award of attorney fees. Br. of Appellants/Alaska at 38; Br. of Appellants/Mt. Hood at 44. The Suppliers counter that this situation is analogous to one in which a defendant successfully defends a contract action by arguing the contract is void, but is still able to collect fees as the prevailing party pursuant to the terms of the contract. Br. of Resp'ts at 47.

---

[13] "In any action brought by a wholesale distributor or a supplier pursuant to this chapter, the prevailing party shall be awarded its reasonable attorney's fees and costs." RCW 19.126.060.

A court may award attorney fees and costs to a prevailing party pursuant to a contractual provision, statutory provision, or a well recognized principle of equity. *E.g.*, *N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*, 29 Wn. App. 228, 236, 628 P.2d 482 (1981). We have not previously decided whether a party may collect attorney fees pursuant to a statute when that party successfully argues the statute is unconstitutional.

The Court of Appeals has held that a party who successfully defends an action on a contract by arguing the contract is void is nevertheless entitled to fees pursuant to the contract. This line of cases begins with *Herzog Aluminum, Inc. v. General American Window Corp.*, 39 Wn. App. 188, 197, 692 P.2d 867 (1984). In *Herzog*, Division One of the Court of Appeals held that even though no contract had been formed, the prevailing party was entitled to fees and cost pursuant to RCW 4.84.330, which provides:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

The *Herzog* court construed "[i]n any action on a contract" to include actions that invalidate the contract. *Herzog*, 39 Wn. App. at 192.[14] Significant to the case before us, *Herzog* also noted that, had the other party prevailed in its suit on the contract, it would unquestionably be entitled to attorney fees and costs. *Herzog*, 39 Wn. App. at 191.

 Although this case is an action on an invalid statute rather than a contract, the same principles apply. Had the Distributors prevailed, they would have been entitled to attorney fees and costs under RCW 19.126. Because the

---

[14] More recently, Division Two of the Court of Appeals declined to apply this reasoning. *Wallace v. Kuehner*, 111 Wn. App. 809, 820, 46 P.3d 823 (2002). The *Wallace* court held when the parties never intended to form a contract, the *Herzog* reasoning does not apply. *Wallace*, 111 Wn. App. at 820.

attorney fees provision was written reciprocally to apply to whichever party won, we hold that defending against an action based on a statute by successfully arguing the statute is unconstitutional allows an award of attorney fees under that statute. We thus affirm the award of attorney fees to the Suppliers. The Suppliers also ask for fees and costs on appeal. We grant the Suppliers their attorney fees and costs on appeal for the same reasons.

## CONCLUSION

We affirm the superior courts in these consolidated cases. RCW 19.126 is struck down in its entirety, as it applies to wine distributors and suppliers, because it violates the dormant commerce clause, is not protected by the Twenty-first Amendment, and the in-state winery exemption cannot be severed without impermissibly broadening the application of RCW 19.126. We affirm that Sebastiani has not breached its oral contract with Alaska. Because Mt. Hood's statutory claims against CWC were not before us, we remand that case to the trial court for resolution of those claims consistent with this opinion. Finally, we uphold the award of attorney fees and costs at trial and award the Suppliers fees and costs on appeal.

ALEXANDER, C.J., MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., and SMITH, J. PRO TEM., concur.

After modification, further reconsideration denied April 30, 2003.